IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02071-RMR-STV

UNITED STATES OF AMERICA
ex rel. WADE RINER

       Plaintiff,

v.

BEAVER RUN HOMEOWNERS ASSOCIATION,
ET AL.

       Defendants.

## DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT

Defendants, through their respective counsel, jointly move this Court to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Pursuant to RMR Civ. Practice Standard 7.1B(b), counsel conferred with counsel for Plaintiff. Counsel for Plaintiff opposes the relief requested herein.

**I. INTRODUCTION**

Aside from being sued in this action, Defendants are unrelated and separate community associations in Colorado. This action arises from separate loans each Defendant obtained under the Paycheck Protection Program ("PPP") in 2020 and 2021 during the crisis created by the COVID-19 pandemic. Wade Riner is a Relator bringing this *qui tam* action on behalf of the United States under the False Claims Act. He claims Defendants obtained PPP loans and then had those loans forgiven, when they were ineligible for them. In fact, Defendants were eligible and engaged in the loan approval and forgiveness process in good faith based on the guidance available at the time—none

1

of which expressly declared them ineligible. While the question of Defendants' eligibility cannot be resolved based on Riner's factual allegations alone and would likely require facts outside his Complaint, the Court need not decide whether Riner's untested and novel interpretation of the PPP is correct because Riner—who has no relationship with any of the Defendants and bases his claim exclusively on public records—is unable to avoid the FCA's public disclosure bar under 31 U.S.C.A. § 3730(e)(4). Indeed, Riner is just the sort of "opportunistic plaintiff" lacking any "significant information to contribute" that the public disclosure bar was designed to preclude. Defendants respectfully move to dismiss this action with prejudice.

Were the Court to overlook these problems with Riner's Complaint, it nevertheless should dismiss the Complaint without prejudice because Riner has failed to allege sufficient facts with specificity to support his fraud claims under the FCA.

## II. FACTUAL BACKGROUND

### A. COVID-19 Created an Economic Crisis as Well as a Medical Crisis

On March 11, 2020, after more than 118,000 cases in 114 countries and 4,291 deaths, the World Health Organization declared COVID-19 a pandemic.[1] A few days later, states began to implement shutdowns to prevent the spread of the new disease.[2] On March 27, 2020, the Coronavirus Aid, Relief and Economic Security (CARES) Act, passed by the U.S. Congress was signed into law.[3] The Paycheck Protection Program,

---

[1] Center for Disease Control's website with a Covid-19 timeline, https://www.cdc.gov/museum/timeline/covid19.html
[2] *Id.*
[3] *Id.*

backed by the U.S. Small Business Administration, allowed businesses to keep their workforce employed during the COVID-19 crisis.[4]

### B. Allegations in Plaintiff's Complaint

According to the Complaint, Relator is a "regular homeowner and investor." (Doc. No. 1, Compl., ¶ 10). He is the officer and principal in a corporation that "owns multiple homes in Florida." *Id.* Relator is a "member of the Hunters Run Property Owners Association, Inc., and he was a member of the Boca West Master Association, Inc." *Id.* Through his home ownership in **Florida** and his involvement with **Florida** homeowners associations, Plaintiff alleges violations committed by **Florida** homeowners associations. Nevertheless, Plaintiff, who has no connection whatsoever to Colorado, brings this claim against various unrelated **Colorado** homeowners associations, relying upon a purported violation of the False Claims Act.

Rather than allege some specific knowledge about why each Defendant obtained PPP loans or whether and what they considered about their respective eligibility, Riner bases his FCA claim exclusively on the fact that a representative for each Defendant signed the loan and forgiveness applications certifying eligibility for a PPP loan and the need for money. (Doc. No. 1, Compl. at ¶¶ 63-64). The loan applications are available to every member of the public who has internet access or who can make a FOIA request to the Small Business Administration. *See* Doc. No. 42, *Center for Public Integrity v. U.S. Small Bus. Admin.*, 20-cv-1614 (D.D.C. March 3, 2022). Of importance to the merits of his claims, Riner does not—because he cannot—allege any specific facts about any

---

[4] Small Business Administration website: https://sba.gov/funding-progrma/loans/covid-19-relief-options/paycheck-protection-program

3

Defendant's particular financial circumstances (including the respective average monthly payroll costs, number of employees, or the nature of the operations). Riner does not allege that he was aware of any questions posed to Defendants about their PPP eligibility at the time they applied, whether raised by owners, members, guests, employees, or outside advisors. Riner makes no allegation that any of the Defendants reported a false number of employees, omitted affiliates, misrepresented the compensation they paid to employees during the covered period for each loan, provided false documentation, or failed to use the proceeds of the loan on eligible expenses.

Despite having no apparent connection to any of the Defendants, nor to the State of Colorado, Relator alleges that he is entitled to a percentage of recovery for bringing this claim on behalf of the United States. Notably, however, the United States has declined to intervene.

Based on these material facts, Relator's Complaint cannot withstand scrutiny. As detailed below, Relator does not have standing to bring this claim under the FCA and fails to plead fraud with particularity as required. For all these reasons—or for any one of them—the Complaint should be dismissed.

### III. LEGAL STANDARDS

Defendants move to dismiss the Complaint for a lack of standing. It is Plaintiff's burden to establish each element of standing necessary to confer subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992); *U.S. v. Rodriguez-Aguirre*, 264 F.3d 1195, 1202 n.5 (10th Cir. 2001). "Threadbare recitals of the elements . . . supported by mere conclusory statements" do not suffice to establish Article

III standing at the pleading stage. *COPE v. Kansas State Bd. of Educ.*, 821 F.3d 1221 (10th Cir. 2016), citation omitted.

To overcome a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* at 678. In evaluating a complaint, the court should "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## IV. ARGUMENT

### A. The Court Lacks Jurisdiction Under the FCA's Public Disclosure Bar.

Once jurisdiction is challenged, it is the burden of the party claiming jurisdiction to "show it by a preponderance of the evidence" with competent proof. *In re Natural Gas Royalties*, 562 F.3d 1032, 1039 (10th Cir. 2009), citing *United State ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 551 (10th Cir. 1992). Regarding subject matter jurisdiction, courts "are obliged to presume the absence of jurisdiction unless and until convinced otherwise." *United States ex rel. Boothe v. Sun Healthcare Group, Inc.*, 496 F.3d 1169 (10th Cir. 2007), citing *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

The FCA contains a public disclosure bar that is designed to prevent "opportunistic plaintiffs who have no significant information to contribute of their own" from filing *qui tam* proceedings. *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 571 (10th Cir. 1995)

5

(internal quotations omitted). The FCA requires the court to dismiss a relator action for lack of jurisdiction if:

> [S]ubstantially the same allegations or transactions as alleged in the action or claim were publicly disclosed:
>
> **(i)** in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> **(ii)** in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> **(iii)** from the news media,
>
> *unless* the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C.A. § 3730(e)(4) (emphasis added). The Tenth Circuit Court of Appeals requires a four-step analysis to apply this jurisdictional bar:

> (1) whether the alleged "public disclosure" contains allegations or transactions from one of the listed sources; (2) whether the alleged disclosure has been made "public" within the meaning of the False Claims Act; (3) whether the relator's complaint is "based upon" this public disclosure; and, if so, (4) whether the relator qualifies as an "original source."

*U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1048 (10th Cir. 2004). Riner's Complaint here satisfies each element and is subject to the FCA's mandatory bar.

**1.   Riner's Complaint meets the first two elements of the Tenth Circuit's public disclosure bar test because it alleges transactions that have been publicly disclosed in a "Federal report" and "from the news media."**

To apply the jurisdictional bar, the court must find that the "public domain" contains "*all* the elemental aspects of the allegedly fraudulent transaction." *Praxair*, 389 F.3d at 1050. "It is generally accepted that a response to a request under the FOIA is a public disclosure" and places the information in the public domain. *Id.* A disclosure from the news media is self-explanatory. Both listed sources exist here.

6

The SBA was ordered to, and produced in 2020 and 2021, data on all of the loan and forgiveness applications under the PPP in response to FOIA requests by several news organizations, including ProPublica. *WP Co. LLC v. U.S. Small Bus. Admin.*, 502 F. Supp. 3d 1, 27–28 (D.D.C. 2020) (granting summary judgment in favor of "news organizations" and ordering the SBA to "release the names, addresses, and precise loan amounts of all individuals and entities that obtained PPP and EIDL COVID-related loans by November 19, 2020"). It also released this information in response to a FOIA request to the Center for Public Integrity. *See* Doc. No. 42, *Center for Public Integrity v. U.S. Small Bus. Admin.*, 20-cv-1614 (D.D.C. March 3, 2022).

In any event, after it obtained a court order based on its FOIA request, ProPublica—the investigative journalism and public interest Web site—published a full list identifying the applicants, including all Defendants, their loan and forgiveness amounts, and their lender.[5] Riner alleges each of these elements here. Remarkably, he doesn't allege anything more than these elements to identify the allegedly fraudulent transactions. Even if Riner had included "additional details," the publicly disclosed facts included in his Complaint are enough to fulfill the "public disclosure" requirement. *See In re Nat. Gas Royaltie*s, 562 F.3d 1032, 1040 (10th Cir. 2009) (interpreting Tenth Circuit case law and opining that the "inclusion of additional details in *qui tam* complaint does not prevent application of public disclosure bar"). Prior to the filing of the Complaint, Riner's allegations were publicly disclosed through no fewer than two listed sources; they accordingly fulfill the first two elements of the Tenth Circuit test.

**2.    Riner's Complaint is "based upon" the allegations publicly disclosed by the SBA through FOIA and by ProPublica through its Web site.**

---

[5] Tracking PPP, ProPublica, at https://projects.propublica.org/coronavirus/bailouts/.

The Tenth Circuit has defined the phrase "based upon" to mean "supported by" and explained that "the threshold analysis is 'intended to be a quick trigger for the more exacting original source analysis.'" *Praxair*, 389 F.3d at 1051. "Even *qui tam* actions only partially based upon publicly disclosed allegations or transactions may be barred." *Id*. "The test is whether 'substantial identity' exists between the publicly disclosed allegations or transactions and the *qui tam* complaint." *Id*. Further, the public disclosures need not allege fraud, FCA violations, or any wrongdoing at all—they need only disclose material aspects of the alleged fraudulent FCA violation. *See United States ex rel. Reed v. KeyPoint Government Solutions*, 923 F.3d 729, 737 (10th Cir. 2019) (FCA claim did not satisfy the public disclosure bar even where prior complaint only related to allegations against a similar contractor but did not mention defendant).

Here, Riner's fraud allegation against Defendants is based exclusively on the submission of an application certifying PPP eligibility, nothing more. As in *Praxair*, Riner cannot genuinely dispute his allegations are based on "publicly disclosed" transactions in which the Associations obtained PPP loans from the SBA. Riner's Complaint may not proceed unless he is an "original source." He is not.

### 3.   Riner fails to sufficiently allege he is an "original source."

Under the FCA, "original source" means:

[A]n individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) [sic] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C.A. § 3730(e)(4)(B).

"The burden is on [relator] to show he is an original source." *Praxair*, 389 F.3d at 1052–53. "To meet this burden, he must provide more than an 'unsupported, conclusory allegation.'" *Id.* at 1052 (citations omitted). The relator, instead, "is required to iterate specific facts demonstrating his direct and independent knowledge is 'marked by the absence of an intervening agency ... [and] unmediated by anything but [his] own labor." *Id.* While a relator need not necessarily be an "insider" to meet this standard, a relator nevertheless, fails to meet it "when a *qui tam* action is based solely on *material elements* already in the public domain." *Id.* at 1054.

Here, Relator couldn't have disclosed his material allegations to the Government before the SBA disclosed them in a FOIA response in 2020, in 2021, and in early 2022. *See* Doc. No. 42, *Center for Public Integrity v. U.S. Small Bus. Admin.*, 20-cv-1614 (D.D.C. March 3, 2022). His suit wasn't filed until August 15, 2022. Equally problematic for his Complaint, Riner alleges only the formulaic conclusion that he based his suit on "knowledge that is independent of and materially adds to any publicly disclosed allegations or transactions and had provided that information to the United States prior to filing the complaint by serving a voluntary Pre-Filing Disclosure Statement." (Doc. No. 1, Compl., ¶ 39). Riner doesn't say what he added to the public allegations. He doesn't claim to be an insider; in fact, he doesn't claim to have any relationship with the Defendants at all. And each of the material elements of his fraud claim—that the Defendants applied for PPP loans, were forgiven repayment of those loans, and declared that they were eligible in their applications—were all publicly disclosed before he filed his first unsealed *qui tam*

9

suit in Florida[6] and before he filed this action. While he doesn't specify how he obtained the loan information for each defendant alleged in Paragraph 70 of his Complaint, it is clear that he could have chosen from a multitude of sources easily accessible on the Web. A simple search using a common search engine yields several sources.[7] As in *Praxair*, Riner's knowledge here is neither "direct" nor "independent."

In fact, Riner's knowledge of the alleged transactions here is even further removed from the "direct" requirement than the relator's knowledge was in *Praxair*. There, the court dismissed the relator's claim because he "did not see the fraud with [his] own eyes or obtain [his] knowledge of it through [his] own labor unmediated by anything else" and instead, "derived it secondhand from [a witness], who had firsthand knowledge of the alleged fraud as a result of his employment." *Praxair, Inc.*, 389 F.3d at 1054. In contrast, Relator here doesn't allege that he observed the alleged fraud or even allege that he obtained knowledge of the alleged fraud from an insider; by omission, he effectively concedes that his Complaint isn't based on any inside or special knowledge of the Defendants' decision to apply for PPP loans, whether first or secondhand. It is based solely on the fact that Defendants signed certifications for PPP loans—facts available in the public domain.

Similarly, Riner's knowledge is even less independent than the relator's was in *Praxair*. There, the relator "relied on a publicly disclosed Government document revealing

---

[6] *See United States ex. rel. v. Hunters Run Property Owner Association, Inc. et al.*, 22-cv-23342 (S.D. Fla.).

[7] *See* Google Search Results, https://www.google.com/search?q=ppp+loan+list&rlz=1C1GCEA_enUS982US982&oq=PPP+&gs_lcrp=EgZjaHJvbWUqBggAEEUYOzIGCAAQRRg7MgoIARAAGLEDGIAEMgYIAhBFGDkyBwgDEAAYgAQyDQgEEAAYgwEYsQMYgAQyBggFEEUYPDIGCAYQRRg8MgYIBxBFGD3SAQgxMzYwajBqN6gCALACAA&sourceid=chrome&ie=UTF-8.

the transaction forming the basis of his claim" and investigated by making telephone calls to gather "common information," taking pictures "from a public road," and reviewing "easily attained records." *Praxair, Inc.*, 389 F.3d at 1054. Riner doesn't allege that he investigated at all. He bases his relator qualifications solely on the fact that he is a member of a community association in Florida. (Doc. No. 1, Compl. ¶10). As in *Praxair*, Riner is relying exclusively on the publicly disclosed transactions and "easily obtained records" to form the basis of his fraud claim. Under the *Praxair* court's holding, the Complaint fails to clear the bar on suits under Section 3730(e)(4)(A) and (B). As a result, the Court lacks subject matter jurisdiction over this action and should dismiss Riner's Complaint.

### B. The Complaint Must Be Dismissed for Failure to Plead Fraud

The FCA is not simply some "all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *United States ex rel. Sorenson v. Wadsworth Bros. Constr. Co.*, 48 F.4th 1146, 1157 (10th Cir. 2022) (citation omitted). "Instead, it was enacted for the purpose of stemming 'massive frauds perpetrated by large contractors.'" *Id.* (citation omitted). FCA "plaintiffs must . . . plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b)." *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 195 n. 6 (2016). As it relates to claims for fraud under the FCA, Fed.R.Civ.P. 9(b) requires a plaintiff to "show the specifics of a fraudulent scheme and provide an adequate basis for a reasonable inference that false claims were submitted as part of that scheme." *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010); *U.S. ex rel. Lacy v. New Horizons, Inc.*, 348 F. App'x 421, 424 (10th Cir. 2009) ("FCA claims, which involve averments of fraud, are held to a higher standard."). "FCA claims

11

comply with Rule 9(b) when they provide factual allegations regarding the who, what, when, where and how of the alleged claims." *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018).  The Tenth Circuit has held that generalized statements are insufficient. *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

Plaintiff must show that each Defendant "knowingly made an objectively false representation to the government that caused the government to remit payment." *Polukoff*, 895 F.3d at 739. To satisfy the "scienter" element of the FCA, a party must have acted with a "knowing" state of mind. 31 U.S.C. §3729(a)(1)(A)-(B).  The FCA expressly defines "knowing" to mean "actual knowledge of the information," or acting in either "deliberate ignorance" or "reckless disregard of the truth or falsity of the information." 31 U.S.C. §3729(b)(1)(A).

Plaintiff has supplied no specific details concerning any particular false claim for payment submitted to the government.  Rather, the Complaint merely alleges in general terms that all the Defendants "knowingly misrepresented their need" for PPP loans. (Doc. No. 1, Compl., ¶ 62).  The Complaint is completely devoid of specific facts articulating why each Defendant's request for PPP loans were not factually supported and what specifically was misrepresented, when, where or how.  The Complaint does not allege any *factually* false requests or how they were false.

For example, there are no allegations about why any of the unrelated Defendants obtained PPP loans or whether and what they considered about their respective eligibility.  There are also no factual allegations supporting the claim that the PPP loans were not necessary to support Defendants' ongoing operations.  Simple, conclusory

12

allegations that Defendants' actions were knowingly false will not suffice. Because Plaintiff's "broad-ranging allegations … are insufficient to meet the requirements of Rule 9(b) with respect to particular false claims," the Complaint should be dismissed. *See United States ex rel. Lacy*, 348 F. App'x at 426 (affirming trial court's decision that the FCA claim was not pleaded with particularity).

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court grant their Motion to Dismiss and for any other relief this Court deems right and just, including but not limited to attorneys' fees and costs as allowed by law.

Respectfully submitted this 19th day of March, 2024.

*s/ Tamara A. Seelman*
Tamara A. Seelman
Megan A. Jones
Morgan E. Hamrick
Stephanie Hiquiana
**GORDON REES SCULLY MANSUKHANI, LLP**
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
Tel.: (303) 534-5160
tseelman@grsm.com
mzjones@grsm.com
mhamrick@grsm.com
shiquiana@grsm.com

*Attorneys for Defendants Aspen Alps Condominium Association, Inc., Aspen Square Condominium Association, Inc., Beaver Run Homeowners Association, Christie Lodge Owners Association, Inc., Club Telluride Owners Association, Inc., Fort Collins Country Club, Manor Vail Condominium Association, Park Plaza Condominium Association, Racquet Club Owners Association, and Timberline Condominiums Association, Inc.*

*s/ Justin J. Boron*
Justin J. Boron
**FREEMAN MATHIS & GARY, LLP**
1600 Market Street, Suite 1210
Philadelphia, Pennsylvania 19103
justin.boron@fmglaw.com

Matthew N. Foree
**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
mforee@fmglaw.com

Lorne G. Hiller
**FREEMAN MATHIS & GARY, LLP**
1600 Market Square
1400 16th Street, Suite 400
Denver, Colorado 80202
lorne.hiller@fmglaw.com

*Attorneys for Defendants Avon Lake Villas Condominium Association, Inc., Mountain Haus Condominium Association, San Mortiz Condominium Association, Stonebridge Condominium Association, The Sandstone Creek Club Condominium Association, Inc., and Windsor Gardens Association*

*s/ Christine M. Kroupa*
Christine M. Kroupa
Rachael E. Bandeira
**Quintairos Prieto Wood & Boyer P.A.**
216 16th Street, Suite 1750
Denver, Colorado 80202
tseelman@grsm.com
christine.kroupa@qpwblaw.com
rachael.bandeira@qpwblaw.com

*Attorneys for Defendants Antlers Condominium Association, Austria Haus Condominium Association, Inc., and The Village at Copper Association*

*s/ Brad Shefrin*
Zubin Chadha
Brad Shefrin
**Hall Booth Smith PC**
5445 DTC Parkway, Suite 900
Greenwood Village, Colorado 80111
zchadha@hallboothsmith.com
bshefrin@hallboothsmith.com

*Attorneys for Defendants Crestwood Condominium Association, Inc., and Dancing Bear Residences Owners Association, Inc.*

*s/ Aaron M. Bell*
Patrick Q. Hustead
Aaron M. Bell
Jacob D. Jones
**The Hustead Law Firm, PC**
4643 South Ulster Street
Regency Plaza One, Suite 1250
Denver, Colorado 80237
pqh@thlf.com
amb@thlf.com
jdj@thlf.com

*Attorneys for Defendant The Heather Gardens Association*

*s/ Jeremy D. Peck*
Jeremy D. Peck
**Kutak Rock LLP**
2001 16th Street, Suite 1800
Denver, Colorado 80202
jeremy.peck@kutakrock.com

*Attorneys for Defendant North of Nell Condominium Association*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th day of March, 2024, a true and accurate copy of the foregoing was electronically filed with the Clerk of the United States District Court using the CM/ECF system, which will send notification to all counsel of record:

Randall C. Owens
Michael Adams-Hurta
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, TX 77056
*owens@wrightclosebarger.com*
*hurta@wrightclosebarger.com*

*Attorneys for Relator Wade Riner*

                                       *s/ Linda S. Montoya*
                                       For Gordon Rees Scully Mansukhani LLP